See by the record that you've been appointed in this case under the Criminal Justice Act. On behalf of the court, we want you to know that we thank you very much for accepting that responsibility. It's an honor to do it. As this court is aware from my brief, the issue is the intersection between the sentencing guidelines and the Sixth Amendment. And I think as a cap to that, while I didn't mention it in the brief, the Supreme Court's recent opinion in Allain dealing with mandatory minimums and the fact that any element that a judge would normally find that would increase a mandatory minimum must now be submitted to the jury to be found beyond a reasonable doubt is an important starting point for this decision. Here we're talking about a sentencing guideline determination by a judge that isn't just a slight adjustment to a defendant's potential sentence. We're talking about the addition of terrorism to the element of a crime that can be completely un-terror related. And that addition of terrorism rockets a fairly reasonable sentence of 70 to 100 months, depending on how guidelines are calculated, right off the charts to life. And while the guidelines, as the Supreme Court has told us, are certainly advisory, they still, pursuant to Gall, merit significant consideration. And as this court has continually held and embraced in, there's a, every time the challenges to sentences citing Feimster and saying there is a presumption of reliable, of reasonableness applied to a sentence within a guideline range. Now just because in this case, the judge sentenced within the statutory maximum of section 2339A, it still falls within the Allain framework of the Sixth Amendment. Terrorism enhancement, so took the case out of a typical judge discretionary decision that it triggers that Sixth Amendment protection that Mr. Mohammed was entitled to. And even though the court did find within the statutory maximum, as the Supreme Court noted in Allain, it said, indeed if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range. And I would submit to the court, that is what is happening here when guidelines like the terrorism enhancement are applied in sentencing cases where a judge makes the determination on presumably a preponderance of the evidence standard, whether or not that ratchet applies. And in this case, it's particularly troubling, because in what case, in what world of the law typically is a judge allowed to reach outside of a defendant's case, look at an unrelated defendant. Sure, the facts are the same, the defendant is the same, but he's not in the same indictment. It is a separate indictment. The judge presided over that case, saw that case, as the court can see from the submissions from the transcript, got involved in the case, asked questions of nearly every witness, took a personal interest, and in my opinion, took an interest in my client, and began to point the finger at my client, and began to build a case against my client. In a situation where I can't challenge those witnesses who are testifying, the cooperating witnesses, co-defendants that the government brought in against this other defendant in an unrelated case. Counsel, address, I think you're on the transcripts from the other trial issue. That's correct. And address, and you know it's in a federal statute, it's in the guidelines, and it's in many, many cases, saying that no limit should be placed on the district court in any information about background, character, conduct of the person convicted in the, or accused of a crime, or convicted. Why doesn't that just wipe out the argument you just made? And generally, I would agree, and for application of minor guideline enhancements that swing a sentence a very small amount, I think it should, and I think that is a good standard. But I think the Sixth Amendment trumps the precedent that's out there, and the federal sentencing statutes, when as in this case, the unique case of a murder enhancement on an unrelated charge, when that enhancement has such a dramatic effect on a potential guideline sentence, I think in those cases, it just as in where the courts have, the Supreme Court has now said, the ratcheting up of a floor of a sentence also impacts the Sixth Amendment. That that, this is a unique case where the Sixth Amendment and the right to a jury your potential sentences is impacted in these rare cases. So I'm not asking the court to step in and say, a judge can't make any decisions based on any evidence it sees. What I'm asking the court to do is to say, when there is a situation where a judge is taking information that a defendant does not necessarily have as an opportunity to challenge or argue, and the result of finding that evidence on preponderance standard creates this incredible disparity in a potential sentence, that in those cases, those elements that suggest life sentences for guidelines, that that creates, that that trips the Sixth Amendment protection. That in those cases, there needs to be a different standard, and there needs to be an opportunity for a defendant to directly challenge evidence that's going to be used against him to ratchet up a potential guideline sentence. And that's what didn't happen here. Addressing the mechanics, I understand you're at a different level, but addressing the mechanics of this situation, isn't the, I'll call it AWAN, A-W-A-N, case of the Second Circuit, isn't that about the best explanation of the standard we should use, the underlying felony be calculated to influence or affect a government? Isn't that about the right standard? Again, I think that because of the terroristic nature here, because of, just like in a first-degree murder case where the punishment is so severe, there needs to be a higher standard, a higher, a specific intent standard, so an actor isn't just a general intent could affect a government, but has a, but has a, just as in a premeditated murder, there needs to be that extra burden of specific intent so that the, as the Chandia Court in the Fourth Circuit outlines, that there was that push, that extra knowledge that they knew exactly what they were doing, not as in this case, that they were going under the idealism of protecting a nationalistic interest, of protecting fellow citizens. Okay, my question is, do you think that the AWAN, we'll call it, case has a knowing, in terms of model penal code, has a knowing standard or knowingly standard? Do you think that's what they're doing? That's what I believe. Okay, good. And by the time you get through the third opinion in, is it Chandia, you said it and I'll say it, Chandia, by the time you get through the third opinion, don't you think that's where they are too? Unfortunately, I think perhaps it was they were just getting tired of the case and gave up, or I don't know, but it is, was discouraging when they had such clear language in Chandia, Candia 2, 1 and 2, that did that. Nevertheless, regardless of where they stand, this court, this district, certainly doesn't have a case describing what that is. I think under any kind of ideas of fairness and common law of what requires a heightened mental state, certainly this should be one that requires it. The original decision-making in Chandia certainly suggests that. They're going down that path, that this isn't just a common crime. This is certainly the biggest portion of criminal justice right now, how we deal with terrorism and how we deal with terrorism and the cross-section with the First Amendment. I'm certainly not suggesting this is a First Amendment case, but it becomes a very intellectual coming together, just as premeditation in a first-degree murder requires that extra premeditative state. Because of that, I think specific intent certainly should be applied, and that should be the holding in our . . . Do you believe . . . I don't like the government's argument, but is it your understanding that essentially the government's position in this case is that under Guideline 3A1.4, the terrorism guideline, a plea to the substantive offense to which your client pled, which is providing material support to terrorists, in and of itself is enough to trigger the enhancement? That all this stuff about what was in the other transcripts and everything is essentially immaterial? I think that the government will argue that just as the probation office essentially put that in the PSR. So why is that argument wrong? If you look at the statute, whoever provides material support, et cetera, nor is it intended to be used for one of the following enumerated crimes, and then you look at the enumerated crimes, it defines terrorism. And so why isn't just a plea to the substantive crime as opposed maybe to a conspiracy or something or aiding and abetting, in and of itself not enough to trigger the enhancement? For the very reason why we did not agree to that section of it when we pled guilty, is that it is in essence a separate element of the crime. That under the statute, the statute that we specifically pled to, you can, in theory, you could go abroad, you could plan a murder, you could take steps towards that murder, and it could have nothing to do with terrorism. And that's the argument. There was a separate element that had to be proven to the court, at least under the current framework, at least to a preponderance of the evidence standard, and that we put into play that challenge to that element. And that's why I don't think it's just an automatic go in this case, because that was put before the court. Well, a separate element, excuse me, I didn't mean to interrupt, but a separate element to what, to the offense? It's an, yes. But by pleading guilty, don't you admit that element? No, we do not, because we pled guilty to a substantive crime that doesn't have to include terrorism, and we specifically, in the plea agreement, put that element in issue by not agreeing to whether or not terrorism applied to the statute. Maybe I'm confused. You pled to 2339A, right? True. And that, I thought, is, contains an element that it has to promote terrorism. True. So by pleading to that, don't you plead guilty to terrorism? I guess I'm having some trouble with that, your argument that you didn't plead to that element. Yes, I understand my errors. It's similar to a drug case with quantities, is the way I guess I would analogize it, in that the element is there, but in order to get to a certain mandatory minimum or a certain threshold, an additional element must be proven. And in this case, that additional element that must be proven was that, in fact, there was terrorism going on or terrorism related. I guess I read 2339A that it doesn't, by the very fact that you have to make a decision of whether or not an enumerated offense occurred and whether or not terrorism is related, it doesn't close out the chance that there's a way that you can plead to this count without it being a terrorism related. And I only have about a minute left, so I'd like to save that for Rubo. Thank you very much. We'll next hear from Mr. Naras. Mr. Naras. May it please the Court, Counsel. My name is William Naras. I'm here on behalf of the United States. It's an honor to appear in the Eighth Circuit. I'd like to address the defense's arguments that he began with and then returned to the 3A construction that was discussed a moment ago. With respect to Elaine, this Court has been clear in the worthy decision that the preponderance of the evidence standard is all that is necessary for the government to establish a sentencing hearing and for the district court to find to impose a significant sentencing enhancement. Did you say worthy? Worthy, yes, Your Honor. There's a worthy side, Elaine. I don't believe it does, Your Honor. I don't recall. I don't know if it was before or after, Elaine. I'd see the side as, I believe, a 716F3rd. I don't know, Your Honor, the answer to that. Proceed. With respect to the related case and whether these transcripts were related, Mohammed Said Omar was charged in a separate indictment under seal and then his extradition was sought at the Netherlands. His not being charged in the same indictment was a function of that mechanical process because of the extradition proceedings with Mohammed Said Omar that eventually began later. The witnesses at the Mohammed Said Omar trial were the same witnesses who were lined up to testify against the defendant the day before he entered his guilty plea. Their statements were the same ones provided to defense counsel in discovery and anticipation of that trial. As I understand the defense argument, it is that if there is a substantial increase in the guideline sentence, then the transcripts cannot be considered. What I would respond with is first, there was no objection at the district court to our inclusion of these transcripts. And we filed these transcripts at the sentencing hearing for precisely this reason, to make sure that everyone was on notice that we intended to use them. Second, the defense relied on those transcripts. There are certainly portions of those transcripts that are favorable to the defendant and his arguments, such as calls that these men discussed they made from Somalia that the defendant didn't answer in 2008. And then third, and perhaps most importantly, when the district court made its ruling on the 3A enhancement, what the district court stated was that the facts stipulated by the defendant in the plea agreement demonstrate that the defendant's actions were involved or were intended to promote crimes that were calculated to influence or affect the activities of Ethiopian government and the transitional federal government of Somalia. And that comes from a government appendix at 30, that's the court's oral discussion of its opinion, not from the written decision that's in the defense appendix. Unless there are further questions on that fact, the government's position is that district judges should be allowed to, as your honor, Judge Benton said a moment ago, consider anything that's brought before them, so long as there's some relevant hearsay, it surpasses some hurdle of hearsay, and here it certainly does. Yes. Well, I guess the one problem that, I think this ship has sailed, so I'm not going to spend a lot of time on it, I think that pretty clearly he can do it. But I am a little bit concerned about a notion of due process requires some notice as to what is going to be relied upon so that they can, in theory, rebut it or maybe recall that witness to the stand. And did you give notice of what you were relying upon in the transcript or was it just, here's 1,000 pages and we know you sat during the trial, judge, you know what the testimony is, whatever you think is relevant. Yes, your honor. We cited extensively from the transcripts. We had, it was only recently when we'd had the trial, it was October 2012, the sentencing's were in May 2013, we cited from the transcripts extensively and we provided both counsel, so that they had their own copy of the transcripts, as well as the court, of course, with the transcripts that we had, which were draft at that time. So we cited extensively from it, two specifics. They cited extensively from it, and I would submit that the district court was entitled to weigh that. Certainly, the defense didn't get a chance to cross-examine them, but that goes, I would submit to the weight of the evidence, not a wholesale exclusion of the trial judge's ability to consider it. I would also cite to your honors, and we referenced it in our brief, United States versus Rivera Rodriguez, where the first circuit said, a district court is free to consider evidence from a trial proceeding which the defendant was not present. Would there be anything to prevent the defendant from, if another witness had said something very incriminating at a different trial that you're going to rely upon, is there anything that would prevent the defendant from calling that person and in essence, cross-examining them at the sentencing? I can't think of one, your honor. I would think the defense would be entitled to subpoena that party to testify. I don't know whether there would be Fifth Amendment rights that defendant could invoke, but here these defendants were cooperating. So I imagine that that was a possibility. And I would just cite, as we did in our briefs, that the defense brings to the court's attention studies that are brought, that are discussing the nationalistic motivation of some of these defendants. In some ways, those are very similar to these. Those are not witnesses who are being called to testify. It's papers and articles that are being written and presented to the court for its consideration, but that's just that. My question was a little different. I don't recall from your brief, and I'm looking at it now, but correct me, that you say they did not object to the sentencing transcripts in the trial court? Yes, your honor, and I was just looking at that this morning while I was waiting for our, we do discuss that and it's in the recitation of the proceedings in the first part of the brief. Okay, but it isn't in your argument portion of your brief where it's- No, I was looking at that this morning. I don't believe we made the argument that they waived this objection. I don't think so either. Thank you. So with that, unless there are further questions, I'll proceed to the 3A enhancement, which, as was just discussed, I imagine. So the government's position here is that the district court tracked the Awan decision that Judge Benton mentioned a moment ago and applied a very similar standard. It marched through, starting at the beginning, and there are several prongs to this analysis. It certainly isn't the simplest way this could have been accomplished, I would submit. But the way it stands is the district court begins with whether the offense involved or was intended to promote. And here, I believe the district court referenced both, but primarily focused on the involved prong. And for it to involve a federal crime of terrorism, the court then turns to the definition of federal crime of terrorism. Your Honor was discussing a moment ago whether it automatically triggers it in this case. 18 U.S.C. 2339A is the provision of material support. And then to a conspiracy to kill overseas. 2339A doesn't reference terrorism. It doesn't appear in the statute other than in the title of the statute. And 18 U.S.C. 956 also does not include the word terrorism. That is a conspiracy to kill overseas. What the defendants were charged, or what the defendants, including the defendant on appeal here, were charged with was providing material support to that conspiracy to kill overseas. So the government's position is that when you do the analysis of the federal crime of terrorism, you first determine what is actually the second step. Is it the requisite offense? And here it is, 2339A is listed as one of the federal crimes of terrorism. That's the easy step. The harder step is, and what the defendant grapples with and other courts of appeals have discussed, is this motivation versus intent prong. And that's on whether the offense was calculated to influence or affect the conduct of the government. So we would submit, the United States would submit, that there is that second step in the inquiry. That simply being convicted of a 2339A does not end the analysis. That the court must go one step further and determine whether it was calculated to influence or affect the conduct of government. Well then, does the defendant have to know that? Let's assume a defendant, I don't know, supports murder overseas and thinks he's doing it out of, I don't know, a revenge because somebody's spouse was cheating or ransom or something that's unrelated to overthrow of a government. If that's what is, so do you have to prove then that he knew it had related to the overthrow of the Somalian government? I would say not necessarily that specific, but your argument a second ago about if this person was acting on a belief that he was avenging someone's husband or wife's infidelity, that would not satisfy the element. If that was what the defendant's intent was, that was the intent of the defendant, not his motive, but his intent. Then I would submit, Your Honor, that it would be outside of the 3A. If this defendant had been hired to kill someone and thought the person they were killing was the wife or the husband of the spouse, and that was the understanding, then that person's, the outcome of their offense would not be an effect on the government. You agree that the standard here is a knowing standard under the model penal code? I don't disagree with that, Your Honor. I'm not as versed in the model penal code to know that fact. I'm happy to submit some supplemental briefing on that. If you could, it would help. I know what you say about 2339A, and you're right. But I notice the Sentencing Commission calls the statute providing material support to terrorists. You notice that? Correct, Your Honor. Okay, so how much more do you have to do, you say the Awan case, and you say that's knowing, calculated to influence? Yes, Your Honor. We also cited the JOC case from the 11th Circuit, and that, very similar to Awan, the District Court Chief Judge Davis cited that, both the Awan case and the JOC case, if I'm saying that correctly. And there it says that you focus on the intended outcome. What was the activity calculated to accomplish, not what was the defendant's motivation behind it? And even the Awan case referenced specific intent. I don't think that that's the crux of the issue, whether it's specific intent or not. I think where the defense and the government part ways is on this motivational discussion. Awan, JOC, and I would submit even Chambia, by the end, have moved away from any discussion of motive. And the reason is, as the Awan court stated, motive is concerned with the rationale for an actor's particular conduct. It would be a very difficult inquiry for these district judges to try to understand the defendant's motive, whether the defendant's motive was noble or not noble. That's not the determination. Don't they do that kind of thing all the time, counsel? I mean, that doesn't seem too tough a standard. I think what the guidelines contemplate is not motive. They contemplate on the effect of the offense. In the Awan case that your honor referenced, I think gives two examples of why that's the appropriate analysis. The assassin who's motivated simply by money, but knows that he's going to kill the head of a government. That person clearly is subject to 3A, even if his particular motive is simply greed. They also discuss whether the, was it done to impress a terrorist organization. Quickly, there was one case I wanted to bring to your honor's attention on this, and when we address the model penal code in the supplemental briefing, we can reference this as well. But a recent case out of the Sixth Circuit discussing the attempt, and we did not file a 28-J letter on this. We're happy to do so, but it's United States versus Wright. Came out recently in March of 2014. Yeah, yeah. Certainly. What if the motive was noble? But there is, you also note that there may be, it may have the effect of undermining a government. You want to rescue somebody from captivity, or you want to, I don't know, I have to think about a good, a noble motive that could have how, well, I guess to use an extreme example, what if your motive was to rescue Jews during the Holocaust to prevent their going to Auschwitz, but you also know that you're undermining the German government at the same time. Would that person be guilty of terrorism under this statute? And subject to the enhancement? I think the, and we actually litigated something similar to this, not that fact pattern. But specifically whether someone who was taking up arms against government could be charged as some sort of lawful combatant, whether they were doing something that was lawful as an act of war. We had motions in limine on this before the trial, and Judge Davis excluded that and said it wasn't relevant. More specifically to your question, I think the issue that is being addressed in these facts are people getting together in the United States and deciding to take matters into their own hands and going overseas to kill. This sort of conduct being off limits and being criminalized by the 3A goes back to the Neutrality Act in the days of George Washington, when they wanted to keep America from inciting our allies to retaliate against us because small bands of men were going off to fight the French or the English. So I think under your fact pattern, if the German government, if men here were conspiring to take up arms against the German government during World War II, I think that conceivably they could be subjected to this. I think it's an awful fact pattern, and I don't think the United States would prosecute that, I can't speak to that. But under that fact pattern, I think that taking up arms in secret and going overseas to take up arms against a foreign government could bring you within the purview of the statute. Even if the motive was entirely noble and even something that we would commend someone for doing. Correct, Your Honor, and the nobility, I think, is in some ways in the eye of the beholder. And so many of these defendants that we encounter see their conduct as entirely noble under their value set. And in fact, this recent case, the right case that I cited to your honors, discusses that, that someone whose motive was, in their belief, benign to assist oppressed Muslims, is still subject to this enhancement. And that's from the right decision, the JOC decision talks about that. The Iwan decision also says that motive is not the relevant inquiry for the district court to take. If there are no further questions, thank you very much. Thank you very much. And how much time does Mr. Morrison have? We'll give you five minutes. Appreciate that. Three will do? Whatever you want to give me, I'll take. We'll stay with five and see if you can fill that out. Okay. A couple of things I want to address quickly before I get to the obvious of what's the meat of this argument today. There are circumstances where we could not call the people who testified against our client in the other trial. This is the circumstance. No criminal defense attorney, in their right mind, would allow a cooperating defendant to be subpoenaed and testify prior to their own sentencing. It's just inconceivable. And certainly there are Fifth Amendment protections that would permit that person not to testify. And so, with all due respect to the government, I think that's for sure would have happened here. I must also thank the government for making a better argument about 2339A than I could. But the government's argument is correct. And what this court is grappling with is the very issue of the nobility of somebody's quest, for lack of a better word. And because that nobility, or because whether or not they have been good, that is the exact reason why we need a heightened standard when determining whether or not a terrorism enhancement applies. And that's why we need a heightened set of proof in order to determine whether or not what someone has done constitutes an act of terrorism. At one time, something that is, as the court pointed out, we all would agree would have been an extremely noble act, may not have been seen the same in pre-World War II times, when the country was an isolationist state. And so, to at least require before the heavy hand of a life sentence is handed down, that the government prove to a higher standard. A proof beyond a reasonable doubt standard. And to present evidence that a defendant has the opportunity to fully examine and put to the test. Yes, we used the transcripts as well. Yes, we knew, we were on notice as attorneys for Mr. Muhammad about this trial. We attended the trial. Of course, it's inside of our case and how we can argue to the court about a sentence. But just because you see something, just because it's out there, doesn't mean you get an opportunity as an outsider to truly test the metal of it. It's one thing to quote FBI 302 reports about interviews that are reports taken through the government's lens. It's another thing to quote transcripts where, in this case, certainly the defendant had an aligned interest with the government in suggesting our client was a spiritual leader of this group. To suggest that their client was less culpable. How is that- There was no objection below, as stated, right? Pardon? There was no objection below to use of the sentencing? We used the sentencing, we used them too. We did not object to it. It is, we knew we had to do something. We knew that because the judge was so involved, personally involved in the questioning, personally focused on our client, to simply ignore it would not have done any good. And I think it's the reason why when we go to sentence, go to pass judgment on people accused of these most serious crimes, we can't simply do it at a low standard. And that a greater intent is needed than just knowing that something might happen. Well, let me ask one question, if I may. You've made a reference a couple times to Judge Davis being so involved. And I think you, if you haven't explicitly said it, you've implied over-involved and became personally involved in this case. Doesn't that then raise the obligation to file a motion to recuse? I mean, are we going to be back here in a 2255 saying that either you were ineffective or that there was some constitutional infirmity in Judge Davis even sitting on this case? I think there's some possibility of that, yes. It is a game day judgment that we made in not filing a motion to recuse. A motion that is rarely granted and saving that relationship that you might have with the judge for the sentencing of your client. Thank you. Thank you very much. The case has been well presented by both of you and we will take it under advisement and render a decision in due course. And we thank you both for being here today and making that presentation.